**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-13-0002772**
**20-MAR-2019**
**07:57 AM**

NO. CAAP-13-0002772

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


CATHERINE I. CASTRO, Appellant-Appellant, v.
STATE OF HAWAII, EMPLOYEES' RETIREMENT SYSTEM;
DIANA Y. NAHM, Appellees-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 12-1-2175)


SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, and Leonard and Reifurth, JJ.)

Alfred Castro and Catherine I. Castro were married on April 17, 1971, and remained married until Alfred's death on October 6, 2009. Alfred was employed as a Supervisory Investigator with the State of Hawai'i Department of Human Services and was a member of the Employees' Retirement System of the State of Hawaii ("ERS"). On March 20, 2009, Alfred submitted a Service Retirement Application ("Retirement Application") to Dayle Ishii, an ERS Claims Examiner, in which he specified a retirement date of June 1, 2009, selected the maximum allowance retirement option, and designated his girlfriend, Diana Y. Nham, as beneficiary under his retirement plan.[1]

On May 4, 2009, Alfred went to the ERS-Hilo office and submitted a Re: Cancellation of Retirement Application form ("Cancellation Form"), stating to Ishii that he no longer had

---

[1]    According to Ishii, she completed the Spousal/Reciprocal Beneficiary Notification Form ("Beneficiary Notification Form") including Catherine's name and mailing address, and Alfred signed both the Retirement Application and the Beneficiary Notification Form at the March 20, 2009 meeting.

concerns about the effect that bills pending at the Hawai'i State Legislature might have on his retirement benefits and that, therefore, he did not want to retire on June 1, 2009, but was planning now to retire on December 31, 2009. Four days later, Alfred returned to the ERS-Hilo office and said that he was still concerned about the effect that the aforementioned legislative bills would have on his retirement benefits, and decided that he should continue with or reinstate the original June 1, 2009 retirement date. Ishii checked with ERS personnel in Honolulu and informed Alfred that he could reinstate his original retirement date. Alfred reiterated his desire to withdraw his cancellation, so Ishii noted on the Cancellation Form the date that Alfred conveyed his request, and added that "Member rescinded Cancellation of Retirement Application." According to Ishii, on or about May 12, 2009, she mailed a letter ("Spousal Notification Letter")[2/] to Catherine, using the address for Catherine that Alfred provided on the Beneficiary Notification Form.

Alfred retired on June 1, 2009, and began collecting retirement benefit payments from ERS in accordance with the retirement date and benefit option identified on his Retirement Application. On October 6, 2009, Alfred passed away.

On November 25, 2009, Rosa Mormad, ERS Retirement Claims Examiner, informed Catherine by letter that, because Alfred had passed away within one year of his retirement date, Catherine, as the designated beneficiary, could receive monthly benefits under the survivor option. On December 11, 2009, ERS received a Claim for Death Benefit Payment form signed by Catherine. On December 17, 2009, Mormad notified Catherine by letter and telephone that she had incorrectly identified Catherine as Alfred's designated beneficiary. Catherine asserts that she did not receive the Spousal Notification Letter until she received a copy of it on December 21, 2009.

---

[2/]    The Spousal Notification Letter stated that Alfred had elected a retirement date of June 1, 2009; selected the "Maximum Allowance" retirement option; and named Nham as his "Designated Beneficiary."

This secondary appeal arises out of the administrative agency proceeding initiated by Catherine with regard to her claimed entitlement to retirement benefits upon Alfred's passing, which challenges the July 16, 2012 Final Decision of the ERS Board of Trustees ("Final Decision").[3/] On February 22, 2013, the Circuit Court of the First Circuit ("Circuit Court")[4/] issued the Order Affirming Final Decision of the Employees' Retirement System of the State of Hawaii and Dismissing Appeal ("Order"). Catherine appeals from the Circuit Court's corresponding Final Judgment ("Final Judgment") entered on July 15, 2013, in favor of ERS and Nham.

On appeal, we read Catherine's points of error as contending that the Circuit Court erred in: (1) determining that, pursuant to the language in HRS section 88-333(e) and HAR section 6-26-5.01, ERS provided Catherine with proper notice of Alfred's beneficiary change; (2) failing to find or conclude that, in light of the ERS's practices and policies, Alfred's rescission of the May 4, 2009 Cancellation Form was void, and accordingly, Nham is not the designated beneficiary; and (3) affirming the Final Decision despite the Final Decision's failure to "contain sufficient or adequate separate findings of material 'basic' and 'ultimate' facts to assure reasoned decision making and to facilitate review on appeal."

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments they advance and the issues they raise, we resolve Catherine's points of error as follows and affirm.

(1) Catherine contends that ERS failed to furnish her with timely written notification of Alfred's retirement election

---

[3/] Catherine contends that she did not receive timely spousal notification from the ERS of Alfred's designation of Nham as his beneficiary, as required under Hawaii Revised Statutes ("HRS") section 88-333(e) and Hawaii Administrative Rules ("HAR") section 6-26-5.01, and that Alfred's Retirement Application was therefore invalid. However, at the June 22, 2011 contested case hearing before the hearings officer of the Board of Trustees of the Employees' Retirement System of the State of Hawaii ("ERS Board"), ERS presented evidence that the Spousal Notification Letter was sent to Catherine approximately twenty days before Alfred's retirement date, and the letter was not returned to ERS by the United States Postal Service. Catherine presented no testimony or other evidence at the contested case hearing.

[4/] The Honorable Rhonda A. Nishimura presided.

and beneficiary designation, and thus effectively deprived her of the opportunity to "take any action to protect her interests in those benefits." Catherine asserts that the word "furnished" in HRS section 88-333(e)(1)(A) requires that she receive written notification in a timely manner and that the Circuit Court erred in affirming COLs 10 and 11 of the ERS Board's Final Decision.[5]

HRS section 88-333 provides, in part,

(e)     No election by a member under this section shall take effect unless:

    (1)     The spouse or reciprocal beneficiary of the member is furnished written notification that:

        (A)     Specifies the retirement date, the benefit option selected, and the beneficiary designated by the member;

        (B)     Provides information indicating the effect of the election; and

        (C)     Is determined adequate by rules adopted by the board in accordance with chapter 91;

    (2)     The member selects option 2 or option 3 under section 88-83 and designates the spouse or reciprocal beneficiary as the beneficiary; or

    (3)     It is established to the satisfaction of the board that the notice required under paragraph (1) cannot be provided because:

        (A)     There is no spouse or reciprocal beneficiary;

        (B)     The spouse or reciprocal beneficiary cannot be located;

        (C)     The member has failed to notify the system that the member has a spouse or reciprocal beneficiary, or has failed to provide the system with the name and address of the member's spouse or reciprocal beneficiary; or

        (D)     Of other reasons, as established by board rules adopted in accordance with chapter 91.

Any notice provided to a spouse or reciprocal beneficiary, or determination that the notification of

_____

[5]     COLs 10 and 11 of the Final Decision provide:

10.     Actual receipt of the spousal notification letter by the member's spouse is not required by either HRS § 88-333(e) or HAR § 6-26-5.01.

11.     Neither HRS § 88-333(e) or HAR § 6-26-5.01 imposes a deadline by which ERS must send the spousal notification letter to the member's spouse.

> a spouse or reciprocal beneficiary cannot be provided shall be effective only with respect to that spouse or reciprocal beneficiary. The system shall rely upon the representations made by a member as to whether the member has a spouse or reciprocal beneficiary and the name and address of the member's spouse or reciprocal beneficiary.

Haw. Rev. Stat. § 88-333(e) (Supp. 2008). HAR section 6-26-5.01(b), regarding spousal or reciprocal beneficiary notification, states that "[t]he notice shall be in writing and provided in one of the following ways: (1) Via hand-delivery; or (2) By mail." Haw. Admin. R. § 6-26-5.01(b).

Contrary to Catherine's contention that she must receive written notification in order for ERS to fulfill the requirements of HRS section 88-333 and HAR section 6-26-5.01(b), neither the statute nor the administrative rule suggests or requires that notice is only effective upon receipt. *See* Haw. Rev. Stat. § 88-333; Haw. Admin. R. § 6-26-5.01(b).

Further, to construe the words "furnished" or "provided" in HRS section 88-333 and HAR section 6-26-5.01(b), respectively, to incorporate "receipt," would lead to an inconsistent reading of the statute and administrative rule. The statute states that the system "shall" rely on representations made by the member as to the existence of a spouse or reciprocal beneficiary as well as their name and address. Haw. Rev. Stat. § 88-333(e)(3). If "furnished" and "provided" were construed to incorporate "received," as Catherine asserts, HRS § 88-333(e)(3) would be rendered ineffective because it would not allow the ERS to rely on the member's representations. Accordingly, construing "furnished" or "provided" to incorporate "received" would "defy common sense as well as a canon of construction[.]" *Kamalu v. Paren, Inc.*, 110 Hawai'i 269, 278, 132 P.3d 378, 387 (2006) (noting that to equate "costs" and "actual disbursements" would render the definitions mutually exclusive).

Catherine further asserts that HRS section 88-333 and HAR section 6-26-5.01 require that notification be "timely," and that mailing the notification by first class mail "without any mechanism to assure timely spousal notification," puts the member's innocent spouse at risk of potentially catastrophic financial consequence. Again, however, neither HRS section 88-

333 nor HAR section 6-26-5.01, state a time by which notification must be sent or received. *See id.*

ERS provided notice to Catherine consistent with HRS section 88-333 and HAR section 26-6-5.01(b). At the June 22, 2011 hearing before the ERS hearings officer, Ishii testified that she mailed the Spousal Notification Letter to Catherine on either May 12, 2009, or the following day, to the address provided by Alfred on the Beneficiary Notification Form. Pursuant to HRS section 88-333, the Spousal Notification Letter indicated that Alfred elected a retirement date of June 1, 2009; selected the "Maximum Allowance" retirement option; and named Nham as his "Designated Beneficiary." Ishii explained that she specifically remembered mailing the letter, even though two years had passed "[b]ecause this was an unusual situation in that the retiree was married yet listed someone other than the spouse as the beneficiary, so this was not a common concurrence, [sic] and I specifically remember mailing this letter out[,]" and that the Spousal Notification Letter was not returned to ERS or to her by the United States Postal Service.

Catherine did not provide any evidence to support her contention, and failed to show by a preponderance of evidence that she met her burden of proof. Haw. Rev. Stat. § 91-10(5) (Supp. 2008); Haw. Admin. R. § 6-23-31. Accordingly, COLs 10 and 11 of the ERS Board's Final Decision are not clearly erroneous, and the Circuit Court did not err in affirming the Final Decision.

(2) Catherine contends that the rescission of Alfred's May 4, 2009 Cancellation Form requires an additional signed and filed document to revive his cancelled Retirement Application and Nham's beneficiary designation.[6] Catherine argues that it is arbitrary that Alfred was required to sign and file the Cancellation Form to cancel his Retirement Application, but was

_____

[6]     Catherine did not raise the rescission issue in the contested case hearing before the hearings officer when she appeared pro se. Nevertheless, the issue was central to Catherine's supplemental exceptions taken from the ERS hearings officer's Recommended Decision once she was represented by counsel, and was addressed at the oral argument before the ERS Board such that we will not apply waiver and will reach the merits of Catherine's rescission claim.

not required to submit any additional paperwork to rescind his Cancellation Form and revive his Retirement Application.

Catherine argues that ERS did not follow its own "practice and procedures" or "course of conduct" in not requiring a signed and filed document in order to revive Alfred's cancelled Retirement Application. Catherine offers no support for the existence of the alleged ERS practice, procedure, or course of conduct, but argues that not having such a requirement is arbitrary, inconsistent with HAR sections 6-26-1 and 6-26-3, and amounts to a breach of ERS's fiduciary duty.[7]

HAR sections 6-26-1 and 6-26-3 do not address the rescission of a "Re: Cancellation of Retirement Application" form. *See id.* Moreover, nothing in HRS Chapter 88, HAR Title 6, or Hawaiʻi case law requires the rescission of a "Re: Cancellation of Retirement Application" form to be signed by the member or made in writing. Therefore, there does not appear to be an established practice or policy, pursuant to ERS' administrative rules framework, requiring a signed writing in order to rescind a previously cancelled application.

---

[7] Section 6-26-1 states:

> _Application for retirement; person filing; when filed._
> (a) An application of service retirement shall be filed by the member.

Haw. Admin. R. § 6-26-1(a).

Section 6-26-3 states:

> _Contents of application._ (a) All applications for retirement benefits shall contain the following information:
>
> \* \* \*
>
> (7) The name, relationship, social security number and date of birth of any beneficiary designated to receive the benefit payable upon the death of the member after retirement;
>
> (8) The duly notarized signature fo the member is required unless:
>
> > (A) The member executes the application in the presence of a staff member who is authorized by the administrator of the system to accept applications[.]

Haw. Admin. R. § 6-23-3(a)(7), (8).

7

Catherine observes that Ishii's testimony is the only evidence of Alfred's intent to revive his cancelled application and beneficiary designation therein and dismisses its sufficiency as "bare two year old rank hearsay recollection." However, as the party initiating the ERS proceeding, Catherine had the burden of producing evidence and the burden of persuasion. *See Panado v. Bd. of Trustees, Emps' Ret. Sys.*, 134 Hawai'i 1, 11, 332 P.3d 144, 154 (2014) ("The party initiating the ERS proceeding 'shall have the burden of proof, including the burden of producing evidence and the burden of persuasion.'" (quoting HAR § 6-23-31)). Catherine had the opportunity to cross-examine Ishii about the events surrounding the alleged rescission or to offer contrary evidence, but failed to do so.

Further context supports the Circuit Court's decision. Alfred went into the ERS-Hilo office and stated that he wanted to rescind his Cancellation Form and reinstate his Retirement Application, which provided that he would retire on June 1, 2009. Alfred's intentions were memorialized on the Cancellation Form that he had previously submitted with the handwritten note dated May 8, 2009 that states, "Member rescinded Cancellation of Retirement Application." Alfred actually retired on June 1, 2009, consistent with his Retirement Application, and began collecting retirement benefit payments accordingly. From this, we conclude that COLs 13 and 14 of the ERS Board's Final Decision are right and that the Circuit Court was right to affirm the Final Decision and to issue Final Judgment accordingly.[8]

(3) Catherine contends that the Circuit Court erred because its Order and the ERS Board's Final Decision contained no findings of fact or conclusions of law disclosing any reasoned decision making. The Circuit Court's Order does not require

---

[8] Catherine contends that the ERS breached its fiduciary duty toward Alfred to provide sufficient information to make informed decisions respecting his retirement. While the ERS Board occupies a fiduciary relationship to its members, and that relationship requires the ERS to provide sufficient information to permit informed decision-making, *Honda v. Bd. of Trustees of the Employees' Ret. Sys. of the State*, 108 Hawai'i 212, 221, 118 P.3d 1155, 1164 (2005), Catherine points to no evidence of the ERS's breach of fiduciary duty. Instead, Catherine highlights the "present state of confusion and uncertainty" as evidence of ERS's alleged breach. Catherine's possible confusion or uncertainty notwithstanding, it does not appear that ERS breached its fiduciary duty to keep Alfred informed.

8

findings of fact or conclusions of law. Haw. Rev. Stat. §§ 91-1 (1993) (defining "Agency) and 91-12 (1993). We review Catherine's contention, however, with regard to the ERS Board's Final Decision.

*In re Haw. Elec. Light Co.*, 60 Haw. 625, 641-42, 594 P.2d 612, 623 (1979). Catherine contends that the ERS Board failed to provide a reasoned explanation "regarding its justification for departing from its established practice and procedure . . . ." As noted above, Catherine does not establish any requirement in the law that rescission of a Cancellation Form be in writing or any such "established practice and procedure." Furthermore, Catherine did not raise this argument on appeal to the Circuit Court. Therefore, the Circuit Court made no ruling on the issue, and we are unable to address the matter further on this secondary appeal.

Therefore, we affirm the July 15, 2013 Final Judgment and February 22, 2013 Order entered by the Circuit Court of the First Circuit.

DATED: Honolulu, Hawai'i, March 20, 2019.

On the briefs:

Robert J. Crudele and
Francis R. Alcain
(Crudele & De Lima)
for Appellant-Appellant.

Patricia Ohara,
Robyn B. Chun, and
Elmira K.L. Tsang,
Deputy Attorneys General
for Appellee-Appellee
State of Hawaii, Employees'
Retirement System

Presiding Judge

Associate Judge

Associate Judge